UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FINN-OLAF JONES | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO.: |
| BENEDICTE HALLOWELL | ) |
| Defendant. | ) |

**COMPLAINT AND JURY DEMAND**

**i. Introduction**

1. This case is about a daughter's relentless campaign to demonize her brother, Finn-Olaf Jones ("Mr. Jones"), in the hopes of ostracizing him from the family and excluding him from his rightful inheritance. The defendant, Benedicte Hallowell, attempted to and did use her close relationship with her mother, Yoyo Tesdorpf Jones, to influence her mother to rewrite her will and sign certain documents to exclude the plaintiff and Hallowell's brother, Finn-Olaf Jones, from his share of the family inheritance. Not satisfied with destroying Mr. Jones' relationship with his mother, Ms. Hallowell continued her relentless campaign of defamation by spreading lies and rumors about morally depraved acts supposedly committed by Mr. Jones to all who would listen, and even to those who tried not to listen. Her assertions about Mr. Jones were false and were disseminated with the intention of persuading members of Mr. Jones' extended family, co-workers, friends and colleagues that they would be well served to disassociate themselves from Mr. Jones. These defamatory falsehoods, many of which are defamatory per se, have

intensified substantially over the past three years, and have caused Mr. Jones intense emotional suffering, loss of reputation and substantial monetary damages.

## ii. Parties and Jurisdiction

2.      The plaintiff Finn-Olaf Jones is a resident of Los Angeles, California. He is the brother of the defendant Benedicte Hallowell and son of Yoyo Tesdorpf Jones and the late Waring Jones. Mr. Jones is a financial planner and journalist who has spent most of his career working for McCann-Erickson, MGM/United Artists, the Discovery Channel, and other media companies. He is a contributing editor to Forbes Life magazine and is a frequent writer for The New York Times and other national publications. He has been married for 12 years to Kristin Allen Jones, formerly a Vice President with Hong Kong Shanghai Bank. They have four sons.

3.      The defendant Benedicte Hallowell is a resident of Brookline, Massachusetts. She is the sister of the plaintiff and daughter of Yoyo Tesdorpf Jones and the late Waring Jones.

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the Defendant resides in Massachusetts and the Plaintiff resides in California, and the amount in controversy exceeds $75,000.

## iii. Facts

5.      Ms. Hallowell and Mr. Jones are the children of Waring Jones, an American-born art collector and theater producer, and Yoyo Tesdorpf Jones of Denmark. Their family has homes in Minnesota and Denmark, and friends and relatives in both countries. Waring Jones and Yoyo Tesdorpf Jones divorced in 1983, and Waring Jones died in January 2008.

6.      Prior to the actions described herein, Mr. Jones enjoyed positive and fulfilling relationships with numerous relatives and friends in the United States and Denmark. He and his immediate family were well liked, admired, and had an excellent reputation among the

communities in each country. As a result of the actions described herein, this excellent reputation and most of the social and familial relationships have been destroyed due to the vicious and untrue attacks by the Defendant.

7. Ms. Hallowell was estranged from her father during a large part of her adulthood after an incident where he caught her stealing furniture from him. She was and remains extremely close to her mother, Ms. Tesdorpf Jones, who lives nearby.

8. In the early 1990's, Waring Jones' mental health was declining. In 1996, it became apparent both through his actions and medical tests that Waring Jones was suffering from dementia, for which he was eventually legally deemed a vulnerable adult. During his decline, almost all his finances were put in estate trusts, one of which Mr. Jones and Mr. Jones and Hallowell's brother, Henrik Jones, initially served as trustees.

9. During this period of Waring Jones' mental decline, Henrik Jones, as he later admitted, secretly withdrew $325,000 from Waring Jones' estate which he used to invest and ultimately lose in a failed personal business venture. He was replaced as trustee by a Boston accounting firm, Loring Wolcott & Coolidge.

10. In 2001, a painting owned by Waring Jones' was sold for $800,000 at an auction in Denmark. Ms. Hallowell served as an agent for the auction. Only $740,000 was transferred to Waring Jones' account after the sale, however. Ms. Hallowell insisted that the difference was the result of a short-term fluctuation in currency rates. However, Mr. Jones later discovered that $60,000 had been transferred to an account in Denmark controlled by Ms. Hallowell and Ms. Tesdorpf Jones

11. Later in 2001, Ms. Hallowell purchased four paintings worth $58,000 using her father's account and shipped the paintings to her house. She also took a print by Rembrandt

owned by her father worth approximately $20,000. These actions were uncovered at a trustee meeting for Waring Jones' trust in September 2001.

12. Mr. Jones was concerned about his sister's actions and contacted her via letter and phone calls, though these efforts were ignored. Up to this time, Ms. Hallowell and her husband had been working closely with Mr. Jones and Waring Jones' staff in forcing Henrik Jones to return the $325,000 that he had withdrawn from their father's account. However, after being caught engaging in her own misconduct with their father's assets, Ms. Hallowell abruptly began attacking Mr. Jones and his family, conspiring to seize his share of their father's and mother's estates, and attempting to alienate as many people as possible from Mr. Jones.

13. In 2004, Ms. Hallowell and Henrik Jones petitioned a Minnesota court to become co-trustees of Waring Jones' estate. With knowledge of their previous misappropriation from his father's estate, Mr. Jones decided to oppose the petition.

14. In 2005, after a lengthy, insulting, but ultimately fruitless examination of Mr. Jones at the petition hearing, Henrik Jones and Ms. Hallowell agreed to drop their efforts to take over the estate. They also agreed to pay Mr. Jones' legal fees incurred in the action.

15. Angered by the embarrassment associated with the trustee battle, Ms. Hallowell took her vicious attacks against Mr. Jones to the next level. Ms. Hallowell began informing friends and relatives that Mr. Jones (not Ms. Hallowell) had stolen from their father's estate and that it was Mr. Jones who had sued Waring Jones.

16. In December 2005, Mr. Jones and his wife welcomed a new son, Stellan. Ms. Hallowell and Henrik Jones contested the circumstances of Stellan's birth in an attempt to exclude Stellan from Waring Jones' will and the family limited partnership.

17. In 2006, Ms. Hallowell continued her relentless attacks. She informed relatives and friends that Mr. Jones had sued their father, that Mr. Jones and his wife regularly cheated on each other, and that Mr. Jones was a thief and a rapist. Each and every one of these factual assertions was false, defamatory and in many cases, defamatory per se.

18. Ms. Hallowell's attacks in 2006 largely succeeded in poisoning Mr. Jones' reputation with many relatives and family friends. For instance, Marianne Boel, the Lady-in-Waiting to the Danish Queen and a friend of Mr. Jones since he was an infant, returned a Christmas card sent by Mr. Jones, writing him in a letter she apparently circulated around Denmark and England that he was "not worthy of calling [him]self a Jones." The information relied upon by Ms. Boel had been supplied to her directly by Ms. Hallowell. Mr. Jones later discovered that Ms. Hallowell had contacted friends and family of Ms. Boel asking for help in ostracizing Mr. Jones from his community of relatives and friends in Denmark. Ms. Hallowell even recruited Ms. Tesdorpf Jones and Ms. Tesdorpf Jones' sister and two brothers to aid in her efforts.

19. Mr. Jones met with his mother, Ms. Tesdorpf Jones, in February 2006 to discuss Ms. Hallowell's slander, and as a result Ms. Tesdorpf Jones agreed not to get involved again with Ms. Hallowell's slander campaign against Mr. Jones. One month later, Ms. Hallowell and Henrik Jones contacted Ms. Tesdorpf Jones together and continued the slanderous campaign. As a result, Ms. Tesdorpf Jones repeated the slanderous comments made to her by Ms. Hallowell to her friends and family in Demark, which further destroyed Mr. Jones' reputation.

20. Around the same time in 2006, Ms. Tesdorpf Jones rewrote her will to cut Mr. Jones out of his inheritance and reapportioned what would have been his inheritance to Ms.

Hallowell and Henrik Jones. Ms. Hallowell's plan to have Mr. Jones ostracized from the family through lies and falsehoods had succeeded.

21. Also in 2006, Ms. Hallowell attempted to prevent Mr. Jones and his family from being invited to his and Ms. Hallowell's cousin's wedding. Her slander included, again, the false accusation that Mr. Jones was a thief, had sued his father, and was involved with sexual improprieties. Mr. Jones and his family were uninvited from the pre-wedding party, but invited to the wedding.

22. As a result of the defamatory comments directed to him, Mr. Jones was forced to sit in the back of the church with his immediate family during his cousin's wedding and was instructed to exclude his children from attending the reception.

23. When Mr. Jones wanted to bring his children to visit his grandmother's house, Ms. Hallowell warned relatives that Mr. Jones would steal from the house and should be prevented from visiting. Mr. Jones' uncle in Denmark later told Mr. Jones that Ms. Hallowell had informed him that Mr. Jones had stolen from Waring Jones and would be stealing from his grandmother if he got the opportunity and needed to apologize to the family. Mr. Jones' uncle subsequently repeated and republished the misstatements told to him by Ms. Hallowell around the Denmark community. The result was that many friends and relatives in Denmark shunned Mr. Jones during his family's visit to the country causing Mr. Jones' loss of reputation and emotional distress. As the instigator of the campaign of defamation, Ms. Hallowell is responsible for its foreseeable republication.

24. In 2007, Mr. Jones invited another family to spend a week at the Jones family cabin at the Beaver Bay Club in northern Minnesota. Ms. Hallowell telephoned members and staff of the Beaver Bay Club and her father's US Bank trustee who was administering the cabin

in a brazen attempt to persuade the club to ban Mr. Jones, who was an associate member, and to convince members to blackball him from seeking future full membership. Ms. Hallowell told these people that, as a matter of fact, Mr. Jones had stolen from the cabin, that he had stolen from his father, and that he could not afford club membership. Ms. Hallowell also attempted to persuade his father's trustee to have Mr. Jones and his guests arrested for trespassing, despite the fact that Mr. Jones, as an associate member, had the authority to invite guests.

25. In January 2008, Waring Jones passed away. During the period of the funeral and the reception which followed, Ms. Hallowell told friends and relatives, falsely, that Mr. Jones was sexually licentious and related false statements of fact.

26. In April 2008, Mr. Jones' Danish grandmother, the mother of Ms. Tesdorpf Jones, died. Ms. Hallowell worked to hinder Mr. Jones from attending his grandmother's funeral and persuaded their mother, Ms. Tesdorpf Jones, to arrange for Mr. Jones to spend the night of the funeral seventy miles away rather than with the rest of the family residing at his grandmother's home.

27. Ms. Tesdorpf Jones inherited half of her mother's physical estate. Ms. Hallowell pleaded with Ms. Tesdorpf Jones not to distribute any of the inheritance to Mr. Jones. In urging Ms. Tesdorpf Jones to exclude Mr. Jones from the inheritance, Ms. Hallowell repeated and reiterated many of the vicious lies that she had disseminated during the preceding years. When Mr. Jones protested, Ms. Tesdorpf Jones told him that she believed, based upon what Ms. Hallowell had informed her, that Ms. Hallowell had been forced to personally incur substantial costs and expenses as a result of Mr. Jones' stealing from his father's estate. As a result, she was conveying Mr. Jones' inheritance from his grandmother's estate to Ms. Hallowell and indicated that she was signing over her house to Ms. Hallowell.

28. Since 2008, Ms. Tesdorpf Jones' mental and physical state has been deteriorating and Ms. Hallowell has been taking advantage of this to influence Ms. Tesdorpf Jones to completely disassociate herself and her estate from Mr. Jones. Ms. Hallowell's attempts to influence Ms. Tesdorpf Jones have principally been accomplished through the dissemination of mistruths and lies concerning Mr. Jones. Ms. Hallowell and her husband have also had several meetings with Ms. Tesdorpf Jones' trustee in order to try and implement their plans to take over Mr. Jones share of his mother's estate.

29. As a result of Ms. Hallowell's dissemination of false statements of fact concerning Mr. Jones, he has suffered intense emotional harm and substantial monetary losses. Similarly, Mr. Jones has been forced to endure the pain and humiliation associated with seeing his immediately family mistreated based upon the falsehoods spread by Ms. Hallowell. To date, Mr. Jones has lost the economic value associated with his lost share of his grandmother's estate, his youngest child's exclusion from the family limited partnership, the trust's legal fees associated with his sibling's petition to change his father's will, the collection of his share of his father's multi-million dollar book collection, the impediments on US Bank from being able to efficiently conduct his late father's business and distribute his assets, and his anticipated share of his mother's estate.

COUNT ONE (DEFAMATION)

30. Mr. Jones incorporates and re-alleges herein the allegations set forth above in their entirety.

31. As set forth above, Ms. Hallowell disseminated statements of and concerning Mr. Jones which were known to be false or which should have been known to be false in the exercise of reasonable care. The statements were defamatory and/or defamatory per se.

32. In so doing, Ms. Hallowell held Mr. Jones up to public scorn and ridicule, and destroyed his and his family's good name and reputation. The consequences to Mr. Jones and his family have been devastating. Mr. Jones' relationship with his friends and relatives has been destroyed, causing him and his family substantial monetary losses as described above, and his and his family's emotional and mental health have suffered incredible harm. Ms. Hallowell is liable for the damages she has caused and continues to cause.

<u>COUNT TWO (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)</u>

33. Mr. Jones incorporates and re-alleges herein the allegations set forth above in their entirety.

34. The intentional acts described above attributable to Ms. Hallowell were extreme, outrageous and beyond the scope of common decency and were intended to cause Mr. Jones severe emotional distress.

35. As a result of the Defendant's conduct, Mr. Jones suffered serve damages for which no reasonable person or persons should be expected to tolerate.

36. Ms. Hallowell is responsible for these damages.

WHEREFORE, Mr. Jones respectfully requests that the Court grant them the following relief:

    i. after trial, enter judgment on each Count asserted by Finn-Olaf Jones in his favor and award him damages in the amount so assessed by the jury;

    ii. grant such other and further relief as the Court deems just and proper.

FINN-OLAF JONES CLAIMS A TRIAL BY JURY ON ALL ISSUES AND CLAIMS SO TRIABLE.

                                      Respectfully submitted,

                                      FINN-OLAF JONES.

                                      By his attorneys,

                                      _____
                                      Howard M. Cooper (BBO #543842)
                                      David H. Rich (BBO #634275)
                                      Joseph L. Sulman (BBO #663635)
                                      TODD & WELD
                                      28 State Street – 31st Floor
                                      Boston, Massachusetts  02109
                                      (617) 720-2626
                                      hcooper@toddweld.com
                                      drich@toddweld.com
                                      jsulman@toddweld.com

DATED: December 23, 2008